## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **LARRY STEWART,** ) | |
| ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CIVIL ACTION NO.** |
| ) | **2:12-CV-0989-KOB** |
| ) | |
| **MICHAEL ASTRUE,** ) | |
| **COMMISSIONER OF** ) | |
| **SOCIAL SECURITY,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On January 13, 2010, the claimant, Larry Stewart, protectively filed for a period of disability and disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. (R. 11). He alleged disability beginning on June 27, 2009 arising from a stroke, hypertension, diabetes mellitus, facial paralysis, obesity, and sleep apnea. (R. 13). The Commissioner denied the claims initially on February 26, 2010. The claimant timely filed a written request for a hearing before an Administrative Law Judge, and the ALJ held a video hearing on March 29, 2011. (R. 11). In an opinion dated April 5, 2011, the ALJ found that the claimant was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act, and, therefore, was ineligible for a period of disability and disability insurance benefits, as well as supplemental income. (R. 19). The Appeals Council subsequently denied the claimant's request for review on

1

January 27, 2012, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). As the claimant has exhausted his administrative remedies, this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review: (1) whether substantial evidence supports the ALJ's residual functional capacity (RFC) determination that the claimant could perform light work limited to occasional handling with the left dominant arm; (2) whether the ALJ fully developed the record despite not obtaining a Medical Source Opinion before making findings regarding the claimant's RFC; and (3) whether the "great weight" the ALJ gave to a non-examining single decision maker's opinion constitutes a harmless error.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if substantial evidence supports his conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. But this court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must look not only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take into account evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the claimant presently unemployed?
(2) Is the claimant's impairment severe?
(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his or her former occupation?
(5) Is the claimant unable to perform any other work within the national economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

The ALJ reviews medical and other evidence to determine the claimant's RFC to do work despite his impairment. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Once the ALJ finds that a claimant cannot return to prior work, the burden of proof shifts to the Commissioner to show other work the claimant can perform. *Gibson*

*v. Heckler*, 762 F.2d 1516 (11th Cir. 1985).  The Commissioner must establish that the claimant, who could not perform past relevant work, could perform other work available in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  "The preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert." *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir. 1986).  "The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony." *Chester v. Bowen,* 792 F.2d 129, 132 (11th Cir. 1986).

Additionally, the ALJ has a basic obligation to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham*, 129 F.3d at 1422.  Developing a full and fair record "may not require use of expert-testimony." *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988).  "The failure to include [an RFC assessment from a medical source] at the State agency level does not render the ALJ's RFC assessment invalid." *Langley v. Astrue*, 777 F. Supp.2d 1250, 1261 (N.D. Ala.2011).  Furthermore, "the ALJ's duty to develop the record [does not] take away the claimant's burden of proving he is disabled." *Ellison*, 355 F.3d at 1276.  A full and fair record ensures that the ALJ has fulfilled his duty to explore the relevant facts and enables the reviewing court to "determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Id*.

The ALJ must state with particularity the weight given to different medical opinions.  Failure to do so is a reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor*, 786 F.2d at 1053.  The Commissioner's policy is that, on appeal, the opinion of a non-examining state agency single decision maker is entitled to no weight.  *See* Program Operations

Manual System DI 24510.05, 2001 WL 1933365; *see also* 20 C.F.R. 404.1513.  "When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's findings, the ALJ's decision will stand." *Caldwell v. Barnhart*, 261 Fed. Appx. 188, 190 (11th Cir. 2008).

## V. FACTS

The claimant completed the eleventh grade and was forty-eight years old at the time of the administrative hearing. (R. 34-35). The claimant has past work experience as a warehouse laborer, forklift operator, and yard worker. (R. 18). The claimant alleged disability from a stroke, hypertension, diabetes mellitus, facial paralysis, obesity, and sleep apnea beginning on June 27, 2009. (R. 13).

*Physical Limitations*

On May 2, 2007, the claimant visited Birmingham Healthcare in Birmingham, AL.  Dr. Simona Dunlap, the examining physician, diagnosed the claimant with hypertension, obesity, and possible sleep apnea.  Dr. Dunlap prescribed Enalapril and HCTZ, and at a follow-up appointment on May 9, 2007, Dr. Dunlap added Atenolol to the claimant's hypertension medications and Flonase for the claimant's sleep apnea. (R. 307-309).  On August 28, 2007, Dr. Dunlap noted that the claimant's hypertension was under "better control but not optimal." (R. 302).  The claimant's blood pressure was 142/91.

On June 27, 2009, the claimant visited Trinity Medical Center Emergency Room in Birmingham, Alabama, complaining of a stroke on the left side. (R. 239).  Two days before his emergency room visit, the claimant alleged that he fell for uncertain reasons and subsequently noticed left facial numbness and facial weakness, a facial droop, a little drooling, and some blurring

of vision in his left eye. (R. 235, 240). The claimant stated that his symptoms were of mild severity and denied having any pain. (R. 240, 246). Denise Edge, an RN, documented that the claimant could ambulate independently and could perform all activities of daily living without assistance. (R. 246). A CT scan showed right parieta ishemia. An MRI of the brain without contrast showed extensive leukomalacia. His transesophageal echo report showed estimated left ventricular ejection fraction of 50% to 55% and normal right ventricular size and function. (R. 235).

On June 30, 2009, Dr. Rodney K. Swillie, the attending physician, diagnosed the claimant with left-sided Bell's palsy, hypertension, and diabetes. (R. 235). Dr. Swillie prescribed the patient Aspirin; Famvir; Monopril; Hydralazine; Hydrochlorothiazide; and Metformin. Dr. Swillie also told the claimant to discontinue using Prednisone because of his high blood sugar levels and to cover his left eye with a patch because of his inability to close his left eye secondary to Bell's palsy. (R. 236).

On August 25, 2009, the claimant visited Birmingham Health Care for a follow-up visit. Dr. Dunlap, the treating physician, stated that the claimant's diabetes mellitus was under "good control." Dr. Dunlap also added a new medication for the claimant's hypertension. The claimant's blood pressure was 163/99. (R. 297).

On August 26, 2009, the claimant returned to Trinity Medical Center for a follow-up from the hospital stay. The claimant's blood pressure was 158/90. Dr. Swillie noted upon physical examination that the claimant had left peripheral nerve palsy, with some mild hyperreflexia throughout. Dr. Swillie diagnosed the claimant with facial paralysis on the left, thought to be cryptogenic Bell's palsy and microvascular cerebrovascular disease, and started him on Pravochol. (R. 329).

On January 13, 2010, the claimant protectively applied for disability insurance benefits and

supplemental security income. The claimant alleged he was disabled from a stroke, hypertension, diabetes mellitus, facial paralysis, obesity, and sleep apnea, and identified his onset date as June 27, 2009. (R. 52).

On February 10, 2010, Jennifer B. Davis, a non-examining state agency single decision maker, noted the claimant's activities of daily living (ADLs). In particular, the claimant alleged that he cooks daily, does light housework, is weak on the left side, and unable to stand for a long time. Also, the claimant alleged difficulty lifting, standing, reaching, walking, sitting, kneeling, stair climbing and seeing. Dr. Davis determined that the claimant's medically determinable impairments could reasonably be expected to produce some stated symptoms and limitations. However, she determined that the claimant's statements about his symptoms and functional limitations were only partially credible because the medical evidence of record in his file did not support the level of severity of the above stated symptoms. Also, she noted that the Social Security Administration field office made no face-to-face observations; that the functional limitations described in the claimant's ADLs were not consistent throughout the folder; and that the claimant alleged weakness but did not use an assistive device for ambulation. (R. 331).

On December 16, 2010, the claimant visited Birmingham Health Care for a blood pressure check up. The claimant had not taken his blood pressure or diabetes medications for four to five months. He complained of headaches, but had no other complaints. The claimant reported that his blood sugars were doing well; before meals blood sugars were 90-100. The claimant's blood pressure was 184/119. Dr. Merri D. Ellison, the examining physician, diagnosed the claimant with high blood pressure, diabetes mellitus, and hyperlipidemia. (R. 333-335).

*The ALJ Hearing*

On February 26, 2010, the Commissioner determined that the claimant was not disabled and denied the claimant's application for disability insurance benefits and supplemental security income. (R. 9). The claimant timely filed a written request for a hearing before an Administrative Law Judge, and the ALJ held a video hearing on March 29, 2011. The claimant, his attorney Darryl Hunt, and a vocational expert, Mary Kessler, attended the hearing in Birmingham, Alabama, with the ALJ presided from St. Louis, MO. (R. 11, 32).

The claimant testified that he had many health problems preventing him from working including high blood pressure; diabetes; weakness and numbness on his left side, mostly in his shoulder, neck, arm, and face; and fatigue. (R. 34-36). The claimant alleged that he had trouble "gripping...and can't hold as tight as [he] used to with [his] left hand" because of the numbness on his left side. (R. 36-37). But, he acknowledged that the numbness in his face, neck, and arms had improved since his Bell's palsy first occurred. (R. 44). He further testified that he cannot pick up more than ten pounds with his dominant left hand, but his right hand is fully functional. (R. 36-37).

The claimant stated that his high blood pressure gives him headaches and his medications make him dizzy and sleepy. He said the headaches occur three to four times a week and last a couple of hours each time. The claimant admitted that aspirin works to treat the headaches, but stated that he usually has to lie down until the headache subsides. (R. 37).

The claimant then testified about his fatigue, and admitted that no doctor had diagnosed the source of his fatigue. The claimant stated that he has to lie down at least once or twice a day for about two, sometimes four, hours. He also stated that he can only stand for five to ten minutes "at the most;" he cannot sit longer than thirty minutes; and he can only walk about a block. (R. 38).

Regarding his sleep apnea, the claimant stated that he wakes up at least two or three times from snoring heavily. He further claimed that he loses his breath and actually stops breathing during sleep. The ALJ asked if any objective medical evidence exists confirming sleep apnea, and the claimant's attorney admitted that the medical record contains nothing except a reference to "possible sleep apnea" in Exhibit 3F. (R. 43). Regarding his diabetes, the claimant stated that he does not notice any symptoms related to diabetes except that he has to wake up and use the bathroom frequently. (R. 39).

The claimant stated that when he is not lying down, his daily activities include sitting on his porch or in his room or performing light chores like cleaning his room and cleaning the kitchen. He stated that he tries to do yard work, but he gets fatigued too quickly and his medications require him to avoid sunlight. (R. 39).

Next, the claimant testified that he stopped taking his blood pressure and diabetes medication for four to five months in December 2010 because he could not afford his medications. (R. 41). He also stated that he has no source of income, but he now gets discount prescriptions for about forty dollars a month and "scrape[s] up" the money the best he can. (R. 41, 44). He admitted that when he resumed taking his medications that his headaches eased and that his medications "keep [him] better." (R. 41-42).

The claimant testified that he was employed at Mack Management, a temp service, where he performed mostly general labor, light cleaning, construction, and warehouse work. He also testified that he shipped and received air conditioners and air conditioner parts as an employee at Weather Tech. The claimant stated that he was a self-employed yard worker around his neighborhood in 2007. (R. 44-45). He further stated that he stopped working in 2008 because he could not find work.

(R. 39) The ALJ asked if the claimant would accept light general work if offered, and the claimant stated that with his fatigue he could probably only work "a couple of hours at most." (R. 42).

Mary Kessler, the vocational expert, testified that the claimant had past relevant work as a warehouse laborer, classified as medium, unskilled work; a forklift operator, classified as medium, semiskilled work; and a yard worker, classified as heavy, unskilled work. (R. 46). The ALJ then presented Dr. Kessler with a hypothetical where she had to assume an individual with the claimant's age, education, and past work experience, and assume the individual is limited to light exertional work with occasional handling with the left dominant arm. Dr. Kessler stated that the hypothetical individual would not be able to perform any of the claimant's past work. (R. 47).

The ALJ next asked Dr. Kessler if jobs existed in the national economy that the hypothetical individual could perform. Dr. Kessler testified that the claimant could perform light, unskilled work, such as a machine feeder and operator, a cleaner, and a vehicle and equipment cleaner. She further testified that those jobs exist in significant numbers in the state of Alabama and in the national economy. (R. 47-48).

Finally, the claimant's attorney asked Dr. Kessler the general standard for adequate work attendance, and she responded that entry-level and unskilled jobs would not tolerate more than one day per month of absenteeism after the initial probation period. During the probation period, Dr. Kessler stated that an employer over an entry-level, unskilled job would not tolerate any absences. (R. 48).

*The ALJ Decision*

The ALJ rendered her decision on April 5, 2011, finding that the claimant was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (R. 19). The ALJ began

her opinion with a detailed description of the five-step sequential evaluation process used to determine if a person is disabled under the Social Security Act. First, the ALJ found that the claimant met the insured status requirements of the Social Security Act through December 31, 2012. Second, the ALJ found that the claimant had not engaged in any substantial gainful activity since June 27, 2009. (R. 13).

Third, the ALJ found that the claimant had the severe impairments of hypertension; diabetes mellitus; facial paralysis and left sided Bell's palsy status post stroke; obesity; and sleep apnea. The ALJ found that the claimant's alleged headaches and fatigue were non-severe because they did not have even a minimal affect on the claimant's ability to work on a regular basis at competitive levels of employment. The ALJ also found that the claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. 404.1525(a). (R. 13).

Next, the ALJ found that the claimant had the residual functional capacity to perform light work, but limited to occasional handling with his left dominant arm. In assessing the claimant's subjective testimony regarding the limiting effects of his pain, the ALJ determined that the claimant's medically determinable impairments of hypertension, diabetes mellitus, facial paralysis and left sided Bell's palsy status post stroke, obesity, and sleep apnea could reasonably be expected to cause the alleged symptoms; however, the ALJ found that the claimant's statements concerning the intensity, persistence, and limiting effect of his symptoms were not credible because they were inconsistent with the RFC assessment. (R. 14-16).

First, the ALJ noted that the claimant remained very active in everyday life by fixing his own breakfast and lunch; taking his medications; watching television; performing light house work; dressing himself; taking a bath; shaving; and feeding himself. (R. 17, 210). The ALJ also noted that

the claimant can lift up to twenty pounds. (R. 217). The ALJ determined that the claimant's "long list of activities is inconsistent with the long list of impairments and allegations regarding the claimant's statements." Therefore, the ALJ found that the claimant could perform at a much higher level than the claimant alleged in spite of his impairments. (R. 17).

Next, the ALJ noted that despite the claimant's statements of left-sided weakness, the claimant does not use an assistive device for ambulation and does not appear to have any difficulty getting around with his alleged impairments. Thus, the ALJ found that the claimant's statements about left-sided weakness were only partially credible. Also, the ALJ considered the claimant's severe stroke in 2009, but concluded that this impairment is "not so severe as to be considered disabling" because the claimant has had no other cerebral incidents and the claimant had not sought or required significant treatment for this impairment. (R. 17).

In reaching the conclusion that the claimant was not disabled, the ALJ also considered the assessments made by the Alabama Disability Determination Services physician, Dr. Jennifer Davis. The ALJ stated that she did not give controlling weight to Dr. Davis's opinion because she was a non-examining physician, but the ALJ did give the opinion "great weight" because it was consistent with and supported by the record. The ALJ indicated that Dr. Davis's opinion noted that the claimant's statements were not fully credible because he does not use an ambulation device for his left-sided weakness. Thus, the ALJ determined that no evidence indicated that the claimant was unable to work. (R. 17).

Lastly, the ALJ determined that the claimant could not perform any past relevant work, but was able to perform other work. The ALJ considered the claimant's residual functional capacity, age, education, and work experience. The ALJ found that the claimant had additional limitations

that impeded his ability to perform all or substantially all of the requirements of "light work." The ALJ noted, however, that the vocational expert testified that given all these factors, the claimant could perform the occupations of machine feeder/operator, cleaner, and vehicle and equipment cleaner. (R. 18-19).

The ALJ concluded that the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Therefore, the ALJ found that the claimant had not been disabled under the Social Security Act from the date of his alleged onset on June 27, 2009, through the date of the decision. (R. 19).

## VI. DISCUSSION

*1. The ALJ's RFC Findings are Based on Substantial Evidence.*

The claimant argues that the ALJ's RFC findings were not based on substantial evidence. To the contrary, the court finds that the ALJ's RFC findings were based on substantial evidence.

The ALJ reviews medical and other evidence to determine the claimant's RFC to do work despite his impairment. 20 C.F.R. §§ 404.1520(e) and 416.920(e); see also *Lewis*, 125 F.3d at 1440. The claimant bears the initial burden of proving he is disabled. *Gibson*, 762 F.2d at 1516. If the ALJ finds that the claimant cannot perform any past relevant work, then the ALJ bears the burden of proving the claimant can perform other work that exists in significant numbers in the national economy. *Chater*, 67 F.3d at 1559 (11th Cir. 1995). Vocational expert testimony is substantial evidence to prove the claimant can perform other work despite his impairments. *Chester,* 792 F.2d at 132.

In the present case, the ALJ explicitly discussed the medical records concerning each of the claimant's impairments to determine the claimant's residual functional capacity. First, the

ALJ discussed the claimant's left sided Bell's palsy following a stroke. Although the claimant complained of weakness and numbness on his left side, the ALJ noted that the claimant did not use an assistive device for walking and did not appear to have any difficulty getting around despite his impairments. (R. 17*)*.

Next, the ALJ determined that the claimant's diabetes was well controlled when monitored closely. Testing after the claimant's June 2009 stroke indicated that his glucose levels were stable. Also, the ALJ noted that the claimant never sought any specialized treatment for diabetes. The claimant stated at the ALJ hearing that he did not notice any symptoms regarding his diabetes except frequent urination at night. (R. 43). The ALJ determined that the claimant's diabetes was not disabling because it did not have an impact on the claimant's day-to-day functioning nor did it limit the claimant's ability to work in a competitive work environment. The ALJ supported her findings with the medical record and the claimant's testimony; therefore, the court finds that the ALJ had substantial evidence to find that the claimant's diabetes was not disabling.

Likewise, the ALJ discussed that the claimant's hypertension was more manageable when he followed the prescribed treatment. Although the claimant stopped treating his hypertension for about five months because he could not afford the medication, he testified that he started receiving discount prescriptions and was able to refill them when necessary. Therefore, the ALJ's finding that the claimant could manage his hypertension with prescribed medication is supported by substantial evidence in the record.

Also, the ALJ considered the claimant's sleep apnea. However, the ALJ noted that Dr. Dunlap diagnosed the claimant with "possible sleep apnea" and that the claimant had not sought

any specialized treatment or equipment to assist him with that impairment. Lastly, the ALJ considered the claimant's obesity and found that the impairment was not of disabling severity because the claimant could perform many daily tasks such as fixing his own breakfast and lunch, performing light housework, and taking a bath. Therefore, the ALJ properly concluded the claimant had the RFC to perform light work, limited to occasional handling with his left dominant arm.

Finally, the ALJ met her burden of proving the claimant could engage in other substantial gainful activity through vocational expert testimony. The vocational expert testified that, given the claimant's RFC for light work limited to occasional handling with his left dominant arm, the claimant could perform work as a machine feeder/operator, cleaner, and vehicle and equipment cleaner. Furthermore, the vocational expert testified that work in these occupations existed in significant numbers in the national economy.

Based on the explicit findings of the ALJ based on the claimant's medical records, and the vocational expert's corroborative testimony, this court concludes that the ALJ had substantial evidence to support her RFC findings.

*2. The ALJ Properly Developed the Record Without Obtaining a Medical Source Opinion (MSO).*

The claimant argues that the ALJ should have developed the record by obtaining a medical source statement either with medical expert assistance or by consultative examination. In particular, the claimant argues that the ALJ needed to develop the record with a consultative examination to "make an informed decision." (Pl.'s Br. at 7-9). However, the claimant admits that nothing expressly requires "a MSO ... to be of record in order for the ALJ to make RFC findings." (Pl.'s Br. at 5). The court finds that the ALJ did not need to obtain a MSO because the

record contained sufficient evidence.

The ALJ makes the determination of a claimant's RFC at the hearing level. 42 U.S.C.§ 405(b)(1) (stating that "the Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for [social security disability or supplemental security income]"); *see also*, 20 C.F.R. § 404.1546(c) (stating that "the [ALJ] is responsible for assessing your residual functional capacity"). Furthermore, because the regulations do not require the ALJ to base his RFC finding on an RFC assessment from a medical source, failure to include a MSO "does not render the ALJ's RFC assessment invalid." *Langley*, 777 F. Supp. 2d at 1261.

Although this court acknowledges that the ALJ has a duty to develop a full and fair record, developing a full and fair record "may not require the use of expert-testimony." *Welch*, 854 F.2d at 440. The ALJ's consideration of a medical expert or a consultative examination is allowed, but not required. *See* 20 C.F.R. 404.1529(b). Additionally, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

In the present case, the record contained sufficient evidence for the ALJ to make a determination of disability, so obtaining a MSO was unnecessary. Requiring the ALJ to obtain a MSO would disregard the ALJ's ability to determine a claimant's RFC based on an already sufficient record. Furthermore, the claimant could have presented a MSO for the ALJ's consideration, but failed to do so. *See Ellison*, 355 F.3d at 1276. The ALJ's duty to develop the record does not relieve the claimant of his burden to prove his own disability. Therefore, this court finds that the ALJ properly developed the record.

*3. The ALJ's Reliance on a Non-examining SDM Opinion was a Harmless Error.*

The claimant argues that the ALJ's reliance on a non-examining single decision maker is a reversible error. The court finds that the ALJ's error was harmless.

The ALJ must state with particularity the weight given to different medical opinions. Failure to do so is a reversible error. *Sharfarz*, 825 F.2d at 279; *see also MacGregor*, 786 F.2d at 1053. The Commissioner's policy is that, on appeal, the opinion of a non-examining state agency single decision maker is entitled to no weight. *See* Program Operations Manual System DI 24510.05, 2001 WL 1933365; *see also* 20 C.F.R. 404.1513. However, if the error is harmless because it would not contradict the findings of the ALJ, then the ALJ's decision stands. *Caldwell*, 261 F. App'x at 190.

The ALJ improperly gave "great weight" to Dr. Jennifer Davis's assessment that the claimant was only partially credible. Dr. Davis determined that because the claimant could perform a range of activities and he did not use an assistive device for ambulation, the evidence did not support the level of severity of the claimant's symptoms. However, as discussed above, the remaining record provided substantial evidence to support a finding that the claimant was capable of performing a light range of work, limited to occasional use with his dominant left hand.

This court finds that the ALJ giving great weight to the single decision maker's opinion is a harmless error because substantial evidence supports the ALJ's decision that the claimant is not disabled.

## VII. CONCLUSION

For the reasons stated, this court finds that the decision of the Commissioner is supported by

substantial evidence and is to be AFFIRMED. The court simultaneously will enter a separate Order to that effect.

DONE and ORDERED this 24th day of September, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE